# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| JOSEPH PISULA, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>  vs.<br><br>ARCADIA CONSUMER HEALTHCARE INC., a Delaware corporation,<br><br>    Defendant. | Case No.:<br><br>**<u>CLASS ACTION</u>**<br><br>**<u>COMPLAINT</u>**<br><br>**<u>DEMAND FOR JURY TRIAL</u>** |

Plaintiff JOSEPH PISULA, individually and on behalf of all others similarly situated, brings this action based upon personal knowledge, and as to all other matters upon information and belief, based upon, *inter alia*, the investigation of his attorneys.

## NATURE OF THE ACTION

1. Defendant Arcadia Consumer Healthcare Inc. is a corporation headquartered in Bridgewater, New Jersey, that, among other things, manufactures and sells consumer healthcare products.

2. Defendant sells to retailers for resale certain healthcare products, including products for hair and scalp care, digestive health, vitamins, minerals, and supplements, first aid, oral care, cough and cold, and foot care.[1] Among Defendant's most successful products is its line of Fungi-Nail products sold in Pen, Ointment, Spray and Liquid forms (the "Fungi-Nail products"). Fungi-Nail products are sold by dozens of retailers throughout Ohio and across the United States.

---

[1] Defendant categorizes the Fungi-Nail products in its "foot care" line of products, as do retailers. *See* https://arcadiach.com/foot-care/(last accessed Dec. 6, 2024).

3.      Many consumers, including Plaintiff, bought the Fungi-Nail products for the purpose of treating nail fungus, based on the product's name and other






advertising that suggests that the product is intended to treat, and effective at treating nail fungus.[2]

---

[2] As the graphics make clear, the misleading representations are substantially similar on the packaging for the liquid, pen and spray.

4.      However, after buying the products based on the false impression that they "CURE AND PREVENT" "NAIL" "FUNGI" with "MAXIMUM STRENGTH" efficacy and applying it to their nails, consumers do not experience any improvement in their health as it relates to the presence of nail fungus.

5.      Despite the name "Fungi-Nail," which suggests that the products are intended to treat, and effective at treating nail fungus, the products contain a fine-print back-label disclaimer indicating that the products are *not* meant to treat nail fungus, nor is they effective at doing so.[3]

6.      Defendant was aware that many consumers do not read some of the products' back label fine print that disclaims the name's assertion and other front-label representations, and was aware that its Fungi-Nail products have no ability to treat nail fungus, yet it proceeded to make those claims on the products' front labels, creating the clear impression that such treatment is possible. The product labels are therefore materially misleading by plainly giving the impression that they treat nail fungus. Hundreds of thousands of consumers have purchased these products with the false belief that they treat nail fungus. Because the Fungi-Nail products do not and cannot treat nail fungus, purchasing consumers have been misled.

7.      As a result of Defendant's deceptive and misleading practices, Plaintiff and the Class members were induced to purchase Fungi-Nail products that do not perform as advertised. Defendant has made millions of dollars in fraudulent sales to individuals who Defendant told were receiving a product that is capable of treating nail fungus. Defendant's customers did not receive the benefit of their bargain because the Fungi-Nail products do not treat nail fungus.

## THE PARTIES

8.      Plaintiff Joseph Pisula ("Pisula") is an Ohio citizen residing in Springboro, Ohio. On or about October 2023, Plaintiff Pisula purchased Maximum

---

[3] *See, e.g.,* https://funginail.com/faqs/why-does-the-fungi-nail-labeling-say-not-effective-on-nails-and-scalp-if-it-is-called-fungi-nail/(last accessed Dec. 6, 2024).

Strength Fungi-Nail Anti-Fungal Pen, .101 fl. oz. (3 mL), from Discount Drug Mart located at 240 W Central Ave, Springboro, OH 45066 for approximately $12.99. Plaintiff Pisula has regularly applied the product to his nails from the date of purchase, with no improvement to the nail fungus condition.

9. Plaintiff Pisula would not have purchased Defendant's Fungi-Nail products if he knew that Fungi-Nail does not treat nail fungus.

10. Plaintiff continues to suffer from chronic nail fungus and expects to purchase an over-the-counter product for nail fungus in the near future. Plaintiff regularly shops at Discount Drug Mart at 240 W Central Ave, Springboro, Ohio, and other Ohio retailers that sell Fungi-Nail products, and he will encounter Fungi-Nail products during those shopping trips. Plaintiff would purchase Fungi-Nail in the future if Defendant corrected the challenged conduct by reformulating the product so that it is effective for nail fungus and accurately labeling it for that use. If Defendant continues selling the current formulation, Plaintiff needs a clear and conspicuous front-label disclosure that the product does not treat nail fungus so he can avoid being misled at the point of sale. Because Defendant continues to use the Fungi-Nail name, antifungal positioning, nail imagery, and fungus-killing representations without a clear front-label correction, Plaintiff cannot determine from the current front label whether the product has been corrected, reformulated, or remains ineffective for nail fungus. Plaintiff therefore faces a real and immediate risk of future harm, including being misled again or being unable to rely on the product's label when deciding whether to purchase.

11. Defendant Arcadia Consumer Healthcare Inc. ("Arcadia") is a Delaware corporation with its principal offices located in Bridgewater, New Jersey. Arcadia does substantial business, including selling its health products, in Ohio, and in the Southern District specifically.

4

## JURISDICTION AND VENUE

12.     This Court has jurisdiction over this class action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). Plaintiff, an Ohio citizen, brings this action on behalf of a proposed class of similarly situated individuals against Defendant, a corporation incorporated and with its principal place of business outside the State of Ohio. The amount in controversy exceeds $5,000,000, and the proposed class includes more than 100 members.

13.     Venue is appropriate in the Southern District under 28 U.S.C. § 1391 because, among other things: (a) Plaintiff resides within the Southern District; (b) Plaintiff purchased the product in the Southern District; and (c) many of the acts and omissions that give rise to the claims for relief alleged in this action took place in the Southern District.

## FACTUAL ALLEGATIONS

14.     Plaintiff is an individual who purchased a one-ounce bottle of Maximum Strength Fungi-Nail Anti-Fungal Pen, .101 fl. oz. (3 mL) at Discount Drug Mart, 240 W Central Ave, Springboro, OH 45066, in or about October 2023, for approximately $12.99. When Plaintiff purchased the product, the product's name "Fungi-Nail" suggested that it is a healthcare product intended for the medical treatment of nail fungus. In addition, the front label reads "Kills Fungus" ("front label claim").

15.     The packaging contains qualifying language on non-front panels, including "This product is not effective on the scalp or nails" and, on certain packaging, "Not for nail or scalp fungus." Those statements do not appear on the principal display panel, are not tied to the challenged front-label representations by an asterisk, callout, or other front-label indicator, and are not presented to consumers in a clear and conspicuous manner at the point of purchase. Plaintiff did not see those non-front-panel statements before purchasing because the product was displayed front-facing in the foot-care section. In any event, the non-front-panel

language contradicts rather than clearly qualifies the principal-display-panel message created by the Fungi-Nail name, antifungal positioning, nail imagery, "Clinically Proven to Cure and Prevent Fungal Infections," and "Kills Fungus" representations.

16. Plaintiff read these statements on the product labels and relied on them when purchasing the products. Plaintiff believed that the claim "Kills Fungus" for a product named "Fungi-Nail" meant that the product kills all fungus, including, and especially, nail fungus, including toenail fungus.

17. The statement created a false impression. As Arcadia admits, the product does not kill nail fungus.

18. Plaintiff purchased the product believing that it would kill nail fungus. He applied the product continuously over a period of several months with no improvement to the fungus on his toenails. Plaintiff received a product that, in fact, does not kill nail fungus. Plaintiff did not get the product that was advertised.

**CLASS ACTION ALLEGATIONS**

19. Plaintiff brings this action on his own behalf and pursuant to Federal Rule of Civil Procedure 23. Plaintiff intends to seek certification of a class defined as follows ("the Class" or "the Class members"):

> The Ohio Class: All persons residing in the State of Ohio who purchased the Fungi-Nail products during the period beginning four years from the date of the filing of the original Complaint to the date of class certification.

20. Excluded from the Class are: (a) Defendant, including any entity in which Defendant has a controlling interest, any parent or subsidiary of Defendant, or any entity controlled by Defendant; (b) the officers, directors, and legal representatives of Defendant; and (c) the judge and the court personnel in this case as well as any members of their immediate families. Plaintiff reserves the right to amend the definition of the Class if discovery, further investigation and/or rulings

by the Court dictate that it should be modified.

21. *Numerosity*. The members of the Class are so numerous that the joinder of all Class members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time, given the amount of Defendant's Fungi-Nail products sold in Ohio, it stands to reason that the number of Class members is at least in the thousands. Class members are readily identifiable from information and records in Defendant's possession, custody, or control, such as account information and sales records.

22. *Commonality and Predominance*. There are questions of law and fact common to Class members, which predominate over any questions affecting only individual Class members. These common questions of law and fact include, without limitation:

    a.    Whether Defendant's products contain the name "Fungi-Nail" and whether the products' labels contain the claim "Kills Fungus";

    b.    Whether Defendant's product labeling created the impression among their customers that their product would kill nail fungus;

    c.    Whether a reasonable person would have read the statements "Fungi-Nail" and "Kills Fungus" and any accompanying language to mean that the products had been scientifically proven to kill nail fungus;

    d.    Whether the "ANTI-FUNGAL" product kills nail fungus;

    e.    Whether it has been scientifically proven that the product kills nail fungus;

    f.    Whether Defendant knew or should have known that it had not been scientifically proven that the product kills nail fungus;

    g.    Whether Defendant knew or should have known that the products do not kill nail fungus;

    h.    The nature of the relief, including equitable relief, to which Plaintiff and Class members are entitled; and

i.      Whether Plaintiff and Class members are entitled to damages and/or injunctive relief.

23.     *Typicality*. Plaintiff's claims are typical of those of other Class members because Plaintiff, like the other Class members, purchased "Fungi-Nail" products that claimed, "Kills Fungus," but would not in fact kill nail fungus.

24.     *Adequacy of Representation*. Plaintiff will fairly and adequately represent and protect the interests of the Class members. Plaintiff has retained competent counsel experienced in litigation of class actions, including consumer class actions, and Plaintiff intends to prosecute this action vigorously. Plaintiff and Class members have a unified and non-conflicting interest in pursuing the same claims and obtaining the same relief. Therefore, all Class members will be fairly and adequately represented by Plaintiff and his counsel.

25.     *Superiority of Class Action*. A class action is superior to other available methods for the fair and efficient adjudication of the claims alleged in this action. The adjudication of this controversy through a class action will avoid the possibility of inconsistent and potentially conflicting adjudications of the asserted claims. There will be no difficulty in the management of this action as a class action, and the disposition of the claims of the Class members in a single action will provide substantial benefits to all parties and to the Court. Damages for any individual Class member are likely insufficient to justify the cost of individual litigation so that, in the absence of class treatment, Defendant's violations of law inflicting substantial damages in the aggregate would go unremedied.

26.     Class certification is also appropriate because Defendant has acted or refused to act on grounds generally applicable to the Class members, such that final injunctive relief or corresponding declaratory relief is appropriate as to the Class as a whole.

## FIRST CAUSE OF ACTION

### (Fraud)

27. Plaintiff repeats and incorporates herein by reference each and every allegation above as if set forth fully herein.

28. Reasonable consumers buy antifungal products in the foot-care section to kill fungus on their feet and toenails. A reasonable consumer would not purchase a product named "Fungi-Nail" for a purpose other than killing fungus, including nail fungus.

29. Defendant markets and sells Fungi-Nail products through mass retailers and online channels. Front-label statements are a material part of consumer purchasing decisions for products sold in drug stores, supermarkets, and other retail locations.

30. Defendant represented to Plaintiff and the Class that Maximum Strength Fungi-Nail Anti-Fungal Pen, .101 fl. oz. (3 mL), kills nail fungus. Defendant labeled and marketed the Product with uniform front-label statements, including "Kills Fungus" (the "Front Label Claim"). In context with the "Fungi-Nail" name, antifungal positioning, nail imagery, and placement in the foot-care section, this message would lead a reasonable consumer to believe the Product is proven to kill nail fungus.

31. The Front Label Claim and related representations were false because the Product is not capable of killing nail fungus as represented.

32. Defendant knew the Product does not kill nail fungus yet refused to change the "Fungi-Nail" name or add a clear front-label disclosure that the Product does not kill nail fungus. Defendant chose to keep the misleading message to drive sales.

33. Defendant could have selected accurate front-label wording but chose not to. By using the word "Nail" in the product name, selling the Product in the foot-care section, using nail imagery, and printing "Kills Fungus" prominently on

the front label, Defendant intended consumers to believe the Product kills nail fungus. The representations were false when made.

34. Ordinary consumers lack expertise in microbiology, dermatology, and podiatric medicine, and do not know that treatments effective on skin fungus may not treat nail fungus or reach fungus within or beneath the nail plate.

35. Defendant knew, or was aware of facts showing, that the Product does not kill or treat nail fungus. Defendant formulated or controlled the Product, selected or approved its active ingredients, controlled the Product's labeling and directions, and included or authorized non-front-panel language stating that the Product is not effective on nails and, on certain packaging, is not for nail or scalp fungus. Those facts contradicted the front-label net impression created by the "Fungi-Nail" name, antifungal positioning, nail imagery, and "Kills Fungus" statement. Defendant nevertheless continued to use that front-label presentation without a clear and conspicuous front-label disclosure that the Product does not kill or treat nail fungus.

36. Defendant's knowledge is further supported by consumer complaints, product formulation records, ingredient information, sales and marketing materials, regulatory materials, and other information within Defendant's possession showing that consumers purchased the Product for nail fungus even though the Product does not kill or treat nail fungus.

37. Reasonable consumers do not second-guess prominent front-label claims by hunting for fine-print qualifications on the back or side of a package, especially when the brand name and front-label presentation appear to confirm the product's intended use.

38. Defendant knew the "Kills Fungus" message, as applied to nail fungus, was false. Defendant possessed or had access to testing, internal documents, regulatory materials, consumer complaints, ingredient information, and other materials contradicting the claim that the Product kills nail fungus.

10

39.     Defendant intended Plaintiff and Class members to rely on the Front Label Claim. Defendant placed the statement on the front label to induce purchases and knew a reasonable consumer would read "Kills Fungus" together with the "Fungi-Nail" name to mean the Product kills nail fungus.

40.     The "Kills Fungus" message is a claimed product attribute. Defendant intended reasonable consumers to treat that attribute as a material benefit, namely that buying and using the Product would treat or cure nail fungus.

41.     Plaintiff Joseph Pisula saw "Kills Fungus" and the "Fungi-Nail" name on the Product label at Discount Drug Mart, 240 W Central Ave, Springboro, Ohio 45066, in or about October 2023. He read and relied on those statements in deciding to purchase Maximum Strength Fungi-Nail Anti-Fungal Pen, .101 fl. oz. (3 mL), for approximately $12.99. He would not have purchased the Product, or would have paid less, had he known the truth that the Product does not kill nail fungus.

42.     Plaintiff and Class members purchased the Product because of the uniform front-label representations at the point of sale and online. Defendant's uniform labeling and marketing reached purchasers across Ohio in a substantially similar manner.

43.     Because the Product is not capable of killing nail fungus, reasonable consumers are misled and deceived by Defendant's packaging and labeling.

44.     Plaintiff and Class members were harmed when they purchased a Product that does not kill nail fungus. Their nail fungus conditions were not treated by the Product. They paid money they otherwise would not have paid.

45.     A clear front-label disclosure that the Product does not kill nail fungus would have materially reduced consumers' willingness to purchase the Product and would have affected the price they were willing to pay.

46.     Plaintiff's and Class members' reliance on Defendant's representations was a substantial factor in causing their harm. Had they known the truth, they would not have purchased the Product or would have paid less.

47. As a direct and proximate result of Defendant's intentional misrepresentations, Plaintiff and Class members suffered damages in an amount to be proven at trial. Damages include the difference between the price paid and the value of the Product as received without the represented attribute, and other reasonably incurred out-of-pocket losses.

48. Because the Product does not kill nail fungus, the challenged representations misled consumers, and Plaintiff suffered the damages described above.

49. Defendant's conduct was willful, wanton, and in conscious disregard of the truth. Plaintiff seeks punitive damages where permitted by Ohio law.

## SECOND CAUSE OF ACTION

### (Fraudulent Concealment and Omission)

50. Plaintiff repeats and incorporates herein by reference each and every allegation above as if set forth fully herein.

51. Defendant made uniform front-label representations about the Product, including "Kills Fungus," together with the product name "Fungi-Nail." These are the "Affirmative Statements."

52. The Product is not capable of killing nail and toenail fungus as represented. That fact is material to consumers deciding whether to purchase the Product and how much to pay.

53. Defendant did not disclose, clearly and conspicuously on the front label or at the point of sale, that the Product does not kill nail fungus and does not treat onychomycosis. Defendant also did not disclose known limits in the Product's ability to reach or act within the nail plate.

54. A duty to speak arose because:

a. Defendant made partial and misleading Affirmative Statements that created a false impression about nail fungus efficacy, which required full and fair disclosure of the Product's inability to kill nail fungus.

b.      Defendant possessed superior and exclusive knowledge about the Product's lack of efficacy against nail fungus, and consumers did not have access to that information.

c.      Defendant chose to speak about antifungal efficacy and therefore had a duty not to omit facts necessary to make its statements not misleading when made.

d.      Defendant knew that consumers, including Plaintiff, were acting on the basis of mistaken knowledge created by the front label, namely that the Product would kill nail fungus.

55.     Defendant knew the omitted facts. Defendant possessed or had access to internal testing and development records, ingredient specifications that do not achieve fungicidal activity in the nail plate, regulatory materials that limit antifungal claims, product formulation information, and consumer complaint data showing lack of effect on nail fungus.

56.     Defendant selected prominent front-label claims that conveyed nail fungus efficacy and withheld a clear front-label disclosure of the Product's inability to kill nail fungus. Any contrary information, if it existed, was relegated to back-label or non-front-panel language and non-prominent locations that consumers do not typically review at the point of purchase.

57.     Defendant concealed and omitted these material facts in order to induce consumers, including Plaintiff, to rely on the overall message of nail fungus efficacy and to purchase the Product at the price charged.

58.     Plaintiff Joseph Pisula saw and relied on the front-label "Kills Fungus" statement and the "Fungi-Nail" name, and he was not provided a clear and conspicuous front-label disclosure that the Product does not kill nail fungus, when he purchased Maximum Strength Fungi-Nail Anti-Fungal Pen, .101 fl. oz. (3 mL), at Discount Drug Mart, 240 W Central Ave, Springboro, Ohio 45066, in or about October 2023, for approximately $12.99. Had the omitted facts been disclosed, he

would not have purchased the Product or would have paid less.

59.     Plaintiff's reliance was justifiable. The omission concerned a core performance attribute. The front label contained the statements a reasonable consumer would see and credit at the point of purchase. No clear front-label disclosure corrected the misleading impression created by the Affirmative Statements.

60.     As a direct and proximate result of Defendant's concealment and omissions, Plaintiff suffered damages. Plaintiff paid money for a Product that lacked the represented and implied ability to kill nail fungus, including a price premium over the Product's true value.

61.     Plaintiff's damages include the difference between the price paid and the value of the Product as received without the omitted attribute, together with other reasonably incurred out-of-pocket losses.

62.     Defendant's concealment and omissions were intentional, willful, wanton, and in conscious disregard of the truth. Plaintiff seeks punitive damages where permitted by Ohio law.

63.     Defendant's uniform front-label statements, and the failure to provide a clear front-label disclosure, reached purchasers across Ohio through in-store shelf presence and online listings.

### THIRD CAUSE OF ACTION

**(Negligent Misrepresentation (pled in alternative to fraud))**

64.     Plaintiff repeats and incorporates herein by reference each and every allegation above as if set forth fully herein.

65.     Defendant had a duty to use reasonable care in communicating information about the Product's performance and efficacy to consumers. A special relationship existed for purposes of this claim because Defendant, in the course of its business, possessed and communicated superior knowledge about the Product's efficacy directly to consumers through uniform labeling and point-of-sale

marketing with the intent that consumers rely on it, and Plaintiff was a known and intended end-user of that information. Defendant's peculiar knowledge of nonpublic facts about nail-fungus efficacy and consumers' inability to verify those facts before purchase further supports this duty.

66. Defendant made the "Kills Fungus" representation without reasonable care or competence to verify its truth. Defendant should have known the statement was false or misleading based on information available to it, including testing, ingredient specifications that do not achieve fungicidal activity in the nail plate, regulatory materials, and complaint data.

67. Defendant supplied false information in the course of its business for the guidance of consumers in purchasing decisions, failed to exercise reasonable care in obtaining or communicating the information, and Plaintiff justifiably relied to his detriment.

68. Defendant intended or expected consumers, including Plaintiff, to rely on the representation in deciding whether to purchase and how much to pay.

69. Plaintiff saw the statement at Discount Drug Mart, 240 W Central Ave, Springboro, OH 45066, in or about October 2023, relied on it, and purchased the one-ounce Product for approximately $12.99.

70. Plaintiff suffered pecuniary loss as a direct and proximate result, including a price premium and out-of-pocket loss.

71. Plaintiff seeks damages and all other relief allowed.

## FOURTH CAUSE OF ACTION

**(Ohio Consumer Sales Practices Act (CSPA); Ohio Rev. Code §§ 1345.01–1345.13, remedies under § 1345.09)**

72. Plaintiff repeats and incorporates herein by reference each and every allegation above as if set forth fully herein.

73. Defendant is a "supplier," and Plaintiff is a "consumer," within the meaning of the CSPA. The sale of the Product is a "consumer transaction."

15

74.    In trade and commerce, Defendant represented on the front label that the Product "Kills Fungus" together with "Fungi-Nail." The statements were likely to mislead reasonable consumers and did mislead Plaintiff.

75.    The Product is not capable of killing nail fungus. The labeling was false or misleading.

76.    Plaintiff purchased Maximum Strength Fungi-Nail Anti-Fungal Pen, .101 fl. oz. (3 mL) at Discount Drug Mart, 240 W Central Ave, Springboro, OH 45066, in or about October 2023, for approximately $12.99, saw the front label, and would not have purchased, or would have paid less, had the truth been disclosed.

77.    Plaintiff suffered ascertainable loss, including a price premium and out-of-pocket loss measured by the difference between the price paid and the value received without the represented attribute.

78.    Plaintiff seeks actual damages or statutory damages of $200, whichever is greater, rescission where appropriate, injunctive relief, and reasonable attorneys' fees and costs where the statutory standards are met. Plaintiff also seeks treble damages to the extent permitted by § 1345.09(B) based on Defendant's knowing violation and prior notice through previously declared acts and rules, as may be shown.

79.    Plaintiff will seek class treatment under the CSPA consistent with **R.C. 1345.09(B)** and will identify substantially similar prior Ohio court decisions or Ohio Attorney General rules or opinions in the public file that placed Defendant on notice that the challenged conduct is deceptive. In the alternative, Plaintiff brings an individual CSPA claim and pursues class treatment on the other causes of action.

## FIFTH CAUSE OF ACTION

### (Breach of Express Warranty; R.C. 1302.26 (UCC 2-313))

80.    Plaintiff repeats and incorporates herein by reference each and every allegation above as if set forth fully herein.

81.    Defendant is a merchant, manufacturer, supplier, labeler, and

16

distributor with respect to the Product. Defendant designs, formulates, labels, markets, distributes, and sells the Product, and places the Product into the stream of commerce for retail sale to Ohio consumers.

82. Defendant made affirmations of fact, promises, and descriptions about the Product that became part of the basis of the bargain. These include the front-label statement "Kills Fungus," together with the "Fungi-Nail" name, antifungal positioning, nail imagery, and substantially similar uniform claims. These are the Express Warranties.

83. The Express Warranties warranted that the Product kills fungus, including nail and toenail fungus, and that the Product possesses the performance attributes represented on the labeling and marketing.

84. Plaintiff purchased the Product in Ohio. Plaintiff Joseph Pisula purchased Maximum Strength Fungi-Nail Anti-Fungal Pen, .101 fl. oz. (3 mL), at Discount Drug Mart, 240 W Central Ave, Springboro, Ohio 45066, in or about October 2023, for approximately $12.99. The Express Warranties were part of the basis of his bargain.

85. The Product failed to conform to the Express Warranties. The Product is not capable of killing nail fungus as warranted.

86. Plaintiff provided reasonable presuit notice of breach within a reasonable time after discovery, consistent with R.C. 1302.65(C). On September 23, 2025, Plaintiff, through counsel, sent a written warranty notice by U.S. Certified Mail, return receipt requested, to Discount Drug Mart, the retail seller, at the store where Plaintiff purchased the Product, and to Discount Drug Mart, Inc.'s legal department. The notice identified Plaintiff, the Product, the Discount Drug Mart purchase location, the approximate purchase date, the front-label representations at issue, and the breach, including that the Product did not conform to affirmations of fact and promises on the label and did not kill nail fungus as represented.

87. Plaintiff also sent the same written notice to Arcadia through its

registered agent for service of process. The notice separately gave Arcadia notice of breach for label-based express warranties and demanded that Arcadia cure the breach, including through a refund to Plaintiff, class-wide resolution discussions for Ohio purchasers, cessation of the "Kills Fungus" claim, and corrective measures.

88. Defendant and the retail seller had a fair opportunity to cure and failed or refused to provide an adequate cure.

89. Any purported disclaimer or limitation that attempts to negate the Express Warranties is ineffective under R.C. 1302.29. Such language conflicts with the specific affirmations of fact and promises on the front label, is not clear and conspicuous, and cannot reasonably negate the express front-label warranty that formed part of the basis of the bargain.

90. Any purported limitation of remedy fails of its essential purpose because it would leave Plaintiff and Class members without a fair remedy for a nonconforming Product that cannot deliver the warranted antifungal performance.

91. To the extent privity is required, it is satisfied because Plaintiff purchased the Product from Defendant or from Defendant's authorized retailer acting within Defendant's intended retail distribution chain. Defendant created, controlled, and placed the Express Warranties directly on the Product label for the specific purpose of inducing retail purchasers, including Plaintiff and Ohio consumers, to buy the Product.

92. In the alternative, Plaintiff and Class members are intended third-party beneficiaries of Defendant's contracts and distribution arrangements with its authorized retailers. Defendant's label-based Express Warranties were directed to and intended to benefit ultimate Ohio purchasers, including Plaintiff and Class members, and were designed to form part of the basis of the bargain at the point of sale.

93. In the further alternative, Defendant sold or offered the Product directly to Ohio consumers through online channels during the class period, and

Defendant's direct-to-consumer labeling, advertising, and warranty scheme supplied the required contractual relationship or otherwise supports enforcement of the Express Warranties by Plaintiff and Class members.

94. As a direct and proximate result of Defendant's breach of express warranty, Plaintiff and Class members suffered actual damages under R.C. 1302.88, including the difference between the value of the Product as warranted and the value of the Product as received. Plaintiff and Class members also seek incidental and consequential damages under R.C. 1302.89 where allowed.

95. Plaintiff seeks judgment for damages, incidental and consequential damages where permitted, pre- and post-judgment interest, costs, and such other relief as the Court deems just and proper.

## SIXTH CAUSE OF ACTION

### (Breach of Implied Warranty of Merchantability;

### R.C. 1302.27 (UCC 2-314))

96. Plaintiff repeats and incorporates herein by reference each and every allegation above as if set forth fully herein.

97. Defendant is a merchant, manufacturer, supplier, labeler, and distributor with respect to goods of this kind. Defendant designs, formulates, labels, markets, distributes, and sells the Product to consumers in Ohio in the ordinary course of business.

98. An implied warranty of merchantability arose by operation of law under R.C. 1302.27 because Defendant and the retail seller are merchants with respect to goods of this kind.

99. The implied warranty of merchantability guaranteed, at minimum, that the Product would pass without objection in the trade under the contract description, would be fit for the ordinary purposes for which such goods are used, and would conform to the promises or affirmations of fact made on the label or container.

19

100. The ordinary purpose of the Product includes the performance represented on its labeling, container, and point-of-sale presentation. For a product named "Fungi-Nail," sold in the foot-care section, bearing antifungal positioning and the front-label claim "Kills Fungus," the ordinary purpose includes killing or treating fungus on or around nails, including nail fungus.

101. The Product was not merchantable at the time of sale. The Product is not fit for its ordinary purposes because it does not perform as an over-the-counter antifungal product represented to kill nail fungus. The Product also fails to conform to affirmations of fact on the label and container, including the "Fungi-Nail" name and "Kills Fungus" claim.

102. Plaintiff purchased the Product in Ohio for ordinary consumer use. Plaintiff Joseph Pisula purchased Maximum Strength Fungi-Nail Anti-Fungal Pen, .101 fl. oz. (3 mL), at Discount Drug Mart, 240 W Central Ave, Springboro, Ohio 45066, in or about October 2023, for approximately $12.99.

103. The lack of merchantability existed when the Product left Defendant's control and persisted through retail sale.

104. Plaintiff provided reasonable presuit notice of breach within a reasonable time after discovery, consistent with R.C. 1302.65(C). On September 23, 2025, Plaintiff, through counsel, sent a written warranty notice by U.S. Certified Mail, return receipt requested, to Discount Drug Mart, the retail seller, at the store where Plaintiff purchased the Product, and to Discount Drug Mart, Inc.'s legal department. The notice stated that the Product was not fit for its ordinary purpose as represented because it did not kill nail fungus as conveyed by the label. The same notice was sent to Arcadia through its registered agent and demanded cure.

105. Defendant and the retail seller had a fair opportunity to cure and failed or refused to provide an adequate cure.

106. Any attempted disclaimer of the implied warranty of merchantability is ineffective under R.C. 1302.29. Any disclaimer conflicts with the specific

affirmations on the front label, is not clear and conspicuous, does not mention merchantability as required, and is unconscionable or otherwise unenforceable under the circumstances.

107. Any purported limitation of remedies fails of its essential purpose because it would leave Plaintiff and Class members without a fair remedy for a nonconforming Product that cannot deliver the implied-warranted performance.

108. To the extent privity is required for economic-loss warranty claims against Defendant, privity is satisfied because Plaintiff purchased the Product from Defendant or from Defendant's authorized retailer acting within Defendant's intended retail distribution chain. Defendant created and controlled the Product's label-based warranties and intended those warranties to reach and induce ultimate Ohio consumers at the point of sale.

109. In the alternative, Plaintiff and Class members are intended third-party beneficiaries of Defendant's contracts and distribution arrangements with its authorized retailers. Defendant's labeling and warranty representations were directed to ultimate purchasers, including Plaintiff and Ohio consumers, and were intended to form the basis of retail consumer purchases.

110. In the further alternative, Defendant sold or offered the Product directly to Ohio consumers through online channels during the class period, and Defendant's direct-to-consumer labeling, advertising, and warranty scheme supplied the required contractual relationship or otherwise supports enforcement of the implied warranty by Plaintiff and Class members.

111. To the extent the Court finds privity lacking for purely economic loss on the implied warranty claim against Defendant, Plaintiff reserves the right to amend to add the retail seller or to conform the pleadings to the evidence regarding Defendant's direct sales, authorized retail distribution, agency relationships, and third-party beneficiary status.

112. As a direct and proximate result of Defendant's breach of the implied

warranty of merchantability, Plaintiff and Class members suffered actual damages under R.C. 1302.88. These damages include the difference between the value of the Product as warranted by law and the value of the Product as received. Plaintiff and Class members also seek incidental and consequential damages under R.C. 1302.89 where allowed.

113. Plaintiff seeks judgment for damages, incidental and consequential damages where permitted, pre- and post-judgment interest, costs, and such other relief as the Court deems just and proper.

## SEVENTH CAUSE OF ACTION

**(Unjust Enrichment; pled in the alternative to CSPA and warranty claims)**

**(Ohio Class)**

114. Plaintiff repeats and incorporates herein by reference each and every allegation above as if set forth fully herein.

115. Plaintiff conferred a direct monetary benefit on Defendant by paying approximately $12.99 for the 1-ounce Product.

116. Defendant appreciated and retained that benefit.

117. It would be inequitable for Defendant to retain the benefit because the Product did not possess the represented performance attribute and the price included a premium attributable to the "Kills Fungus" claim.

118. Plaintiff lacks an adequate remedy at law to the extent legal remedies do not fully restore the benefit unjustly retained.

119. Plaintiff seeks restitution and disgorgement equal to the amount unjustly retained, with interest and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the Class, prays for relief as follows:

1. For compensatory damages in an amount to be proven at trial;
2. For restitutionary damages in an amount to be proven at trial;

22

3. For disgorgement of all monies by which Defendant was unjustly enriched through the sale of the mislabeled Product;

4. For statutory damages of $200 under R.C. 1345.09, trebled where permitted by statute;

5. For Injunctive and declaratory relief, including an order requiring Defendant to cease the challenged representations, make a clear and conspicuous front-label disclosure that the Product does not kill nail fungus, remove false or misleading statements from its Product and packaging, and provide corrective advertising as appropriate;

6. For costs of suit and litigation expenses;

7. For reasonable attorneys' fees as allowed by R.C. 1345.09(F);

8. For UCC damages under R.C. 1302.88–.89;

9. For the establishment of a constructive trust or common fund for the benefit of the Class, as the Court finds appropriate;

10. For pre- and post-judgment interest, costs, and any further equitable relief the Court deems just and proper;

11. For punitive damages to the extent allowed for the common-law fraud counts;

12. For such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff, on behalf of himself and all others similarly situated, hereby demands a jury trial for all claims so triable.


Dated:  June 8, 2026                                    Respectfully submitted,


                                                        */s/ David C. Indiano*

                                                        David C. Indiano, Esq.
                                                        INDIANO & WILLIAMS
                                                        207 Del Parque St., 7th Floor

San Juan, Puerto Rico 00912
Telephone: (787) 641-4545
*david.indiano@indianowilliams.com*

*Local Counsel and Trial Attorney for Plaintiff and the Proposed Class*

Chumahan B. Bowen*
**WILSHIRE LAW FIRM, PLC**
660 S. Figueroa St., Sky Lobby
Los Angeles, CA 90017
Telephone: (213) 381-9988
Facsimile: (213) 381-9989
*chumahan.bowen@wilshirelawfirm.com*

*Attorneys for Plaintiff and the Proposed Class*

*\*Pro hac vice application forthcoming*