**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**

JOSEPH PISULA, individually and on behalf of all others similarly situated,

*Plaintiff*,

v.

ARCADIA CONSUMER HEALTHCARE INC., a Delaware corporation,

*Defendant*.

Case No. 1:26-cv-00574-DRC-KLL

District Judge: Hon. Douglas R. Cole
Magistrate Judge: Hon. Karen L. Litkovitz

# PLAINTIFF'S OPPOSITION TO MOTION TO TRANSFER VENUE; OR, IN THE ALTERNATIVE, TO STAY, OR TO EXTEND DEADLINE TO RESPOND TO COMPLAINT

# TABLE OF CONTENTS


TABLE OF CONTENTS ..... i

TABLE OF AUTHORITIES ..... ii

MEMORANDUM OF POINTS AND AUTHORITIES ..... 1

I. INTRODUCTION ..... 1

II. FACTUAL BACKGROUND ..... 3

III. LEGAL STANDARD ..... 5

IV. ARGUMENT ..... 6

A. The First-to-File Rule Does Not Require Transfer ..... 6

B. The § 1404(a) Factors Do Not Favor Transfer ..... 10

C. Arcadia's Alternative Request for Stay Should be Denied ..... 19

V. CONCLUSION ..... 20

# TABLE OF AUTHORITIES

**Cases**

*Aero Advanced Paint Technology, Inc. v. International Aero Products, LLC*,
351 F.Supp.3d 1067 (S.D. Ohio 2018) ........ 8

*Baatz v. Columbia Gas Transmission, LLC*,
814 F.3d 785 (6th Cir. 2016) ........ passim

*Baglama v. MWV Consumer & Off. Prods.*,
No. 3:13-CV-276, 2014 WL 3793294 (S.D. Ohio July 31, 2014) ........ 14

*Blake v. Fam. Dollar Stores, Inc.*,
No. CIV.A. 2:07-CV-361 (S.D. Ohio June 19, 2007) ........ 12

*Bristol-Myers Squibb Co. v. Sup. Ct.*,
582 U.S. 255 (2017) ........ 2, 10, 11

*Certified Restoration Dry Cleaning Network, LLC v. Tenke Corp.*,
511 F.3d 535 (6th Cir. 2007) ........ 5

*Daimler AG v. Bauman*,
571 U.S. 117 (2014) ........ 2, 10, 11

*DeFrank v. Samsung Electronics America, Inc.*,
No. 1:18-cv-296, 2019 WL 6828357 (S.D. Ohio Dec. 13, 2019) ........ 16

*Duffey v. Arcadia Consumer Healthcare Inc.*,
No. 5:25-cv-00652-M-KS ........ 5, 10

*Duha v. Agrium, Inc.*,
448 F.3d 867 (6th Cir. 2006) ........ 12

*Ford Motor Co. v. Montana Eighth Judicial District Court*,
592 U.S. 351 (2021) ........ 11

*Hale v. Landmark Recovery of Ohio, LLC*,
No. 3:22 CV 2011, 2023 WL 2923339 (N.D. Ohio Apr. 6, 2023) ........ 16

*Hamama v. Adducci*,
No. 17-CV-11910 (E.D. Mich. June 26, 2017) ........ 13

*Hanning v. New England Mutual Life Ins. Co.*,
710 F.Supp. 213 (S.D. Ohio 1989) ........ 12

*Hayde v. Arcadia Consumer Healthcare, Inc.*,
No. 8:24-cv-02657-JDE (C.D. Cal.) ........................................ passim

*Heyman v. Lincoln National Life Insurance Co.*,
781 F. App’x 463 (6th Cir. 2019)........................................ 8

*Hoffman v. Blaski*,
363 U.S. 335 (1960) ........................................ 2, 10, 11

*In re American Medical Sys., Inc.*,
75 F.3d 1069 (6th Cir. 1996)........................................ 9

*In re Davol, Inc./C.R. Bard, Inc., Polypropylene Hernia Mesh Products Liability Litigation*,
MDL No. 2846 ........................................ 18

*Kay v. Nat'l City Mortg. Co.,*
494 F.Supp.2d 845 (S.D. Ohio 2007)........................................ 10

*Kuvedina, LLC v. Cognizant Tech. Sols.*,
946 F.Supp.2d 749 (S.D. Ohio 2013)........................................ 14

*Lake v. Richardson-Merrell, Inc.*,
538 F.Supp. 262 (N.D. Ohio 1982) ........................................ 19

*Landis v. North American Co.*,
299 U.S. 248 (1936) ........................................ 20

*Mayfran Int'l, Inc. v. Eco-Modity, L.L.C.*,
2019-Ohio-4350 ........................................ 19

*MESA Indus., Inc. v. Charter Indus. Supply, Inc.*,
No. 1:22-cv-160 (S.D. Ohio Aug. 3, 2022)........................................ 18

*Moses v. Business Card Express, Inc.*,
929 F.2d 1131 (6th Cir. 1991)........................................ 12, 17

*Nat'l Republican Senatorial Comm. v. Fed. Election Comm'n*,
672 F.Supp.3d 538 (S.D. Ohio 2023)........................................ 10, 16

*Ohio Environmental Council v. U.S. District Ct.*,
565 F.2d 393 (6th Cir. 1977)........................................ 20

*Olin-Marquez v. Arrow Senior Living Mgmt., LLC*,
586 F.Supp.3d 759 (S.D. Ohio 2022)........................................ passim

*Reed Elsevier, Inc. v. Innovator Corp.*,
105 F.Supp.2d 816 (S.D. Ohio 2000) .................... 2, 14, 16, 17

*Reese v. CNH Am. LLC*,
574 F.3d 315 (6th Cir. 2009) .................... 2

*Shapiro v. Merrill Lynch & Co.*,
634 F.Supp. 587 (S.D. Ohio 1986) .................... 12

*Smith v. Bayer Corp.*,
564 U.S. 299 (2011) .................... 6

*Smith v. SEC*,
129 F.3d 356 (6th Cir. 1997) .................... 1

*Stewart Organization, Inc. v. Ricoh Corp.*,
487 U.S. 22 (1988) .................... 17

*Tanyike v. United States*,
603 F.Supp.3d 572 (S.D. Ohio 2022) .................... 12, 14, 19

*United States v. Cinemark USA, Inc.*,
66 F.Supp.2d 881 (N.D. Ohio 1999) .................... 12, 13

*White v. Arcadia Consumer Healthcare Inc.,*
No. 2:26-cv-07207-HDV-DSR .................... 4, 9

**Statutes**

28 U.S.C. § 1391 (c)(2) .................... 10, 11
28 U.S.C. § 1391(d) .................... 10, 11
28 U.S.C. § 1404(a) .................... passim
Ohio Rev. Code § 1302.26 .................... 4
Ohio Rev. Code § 1302.27 .................... 2, 4
Ohio Rev. Code § 1302.65(C) .................... 7
Ohio Rev. Code §§ 1345.01–.13 .................... 2, 4, 7
UCC § 2-313 .................... 4
UCC § 2-314 .................... 4
UCC §§ 1302.88–.89 .................... 7

**Other Authorities**

Admin. Off. of the U.S. Cts., *U.S. District Court--Judicial Caseload Profile: California Central* (June 30, 2026) .................... 18
Admin. Off. of the U.S. Cts., *U.S. District Court--Judicial Caseload Profile: Ohio Southern* (June 30, 2026) .................... 18
*U.S. District Court--Judicial Caseload Profile: Ohio Southern* (June 30, 2026) .................... 18
U.S. Jud. Panel on Multidistrict Litig., *MDL Statistics Report--Distribution of Pending MDL Dockets by District* 3 (July 1, 2026) .................... 18

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Defendant Arcadia Consumer Healthcare, Inc. asks this Court to send an Ohio consumer's Ohio-law action more than 2,000 miles away to California even though Arcadia is not incorporated there, is not headquartered there, and identifies no California witness, document, transaction, purchase, injury, or corporate decision that gave rise to Plaintiff Joseph Pisula's claims. Arcadia's motion rests almost entirely on the existence of *Hayde v. Arcadia Consumer Healthcare, Inc.*, No. 8:24-cv-02657-JDE (C.D. Cal.), and on the fact that *Hayde* pleads a putative nationwide class, which has not been certified. But a proposed class is not a certified class, and *Hayde* does not actually plead most of the claims asserted here. Pisula is an Ohio resident who bought the product in Springboro, Ohio, relied on the challenged label in Ohio, suffered injury in Ohio, and seeks relief for a class limited to Ohio residents.

The Sixth Circuit's first-to-file doctrine does not convert the earliest complaint containing the words "nationwide class" into a magnet for every later state-law consumer action concerning the same product. *Baatz v. Columbia Gas Transmission, LLC*, 814 F.3d 785 (6th Cir. 2016), requires substantial overlap, and explains that the issues must be "materially on all fours" such that adjudication of one action leaves "little or nothing" to decide in the other. *Id.* at 791–92 (quoting *Smith v. SEC*, 129 F.3d 356, 361 (6th Cir. 1997) (en banc)). *Baatz* found that demanding standard satisfied because the competing plaintiffs asserted the same claims under the same laws, using the same theory, and sought the same relief. *Id.* at 792. That is not this case.

*Hayde*'s nationwide claims are limited to intentional misrepresentation, negligent misrepresentation, and express warranty. Ex. A (*Hayde* Second Am. Compl.), ECF No. 7-1 at PageID 72–77 & 80–81 ¶¶28–55 & 73–77. *Hayde*'s remaining statutory claims arise only under California law and are pleaded only for a California class. *Id.* at PageID 77–81 ¶¶ 56–72, 78–82.

*Pisula*, by contrast, pleads seven Ohio causes of action, including fraudulent concealment and omission, the Ohio Consumer Sales Practices Act (CSPA), Ohio Rev. Code §§ 1345.01–.13, breach of implied warranty of merchantability under Ohio Rev. Code § 1302.27, and unjust enrichment—none of which appears in *Hayde*. Compl., ECF No. 1 at PageID 12–16 & 19–22 ¶¶50–63, 72–79 & 96–119. *Pisula* also seeks remedies that *Hayde* does not place at issue for Ohio consumers, including Ohio statutory damages, potential trebling under § 1345.09(B), Ohio statutory attorney's fees, and Ohio UCC remedies. *Id.*, Prayer at PageID 23 ¶¶4, 7–8. A decision in *Hayde* therefore cannot dispose of large portions of this case.

Arcadia's request for transfer under 28 U.S.C. § 1404(a) also fails because Arcadia has not established that this Ohio action "might have been brought" in the Central District of California when filed. 28 U.S.C. § 1404(a); *Hoffman v. Blaski*, 363 U.S. 335, 343–44 (1960). Arcadia is a Delaware corporation headquartered in New Jersey. Compl. at PageID 4 ¶11. Its motion identifies sales in California and its appearance in *Hayde*, but neither makes Arcadia "at home" in California for general jurisdiction, and *Pisula*'s Ohio claims do not arise out of California conduct for specific jurisdiction. *See Daimler AG v. Bauman*, 571 U.S. 117, 137–39 (2014); *Bristol-Myers Squibb Co. v. Sup. Ct.*, 582 U.S. 255, 264–65 (2017). Arcadia's consent to jurisdiction in a different lawsuit cannot supply the statutory prerequisite here. *Hoffman*, 363 U.S. at 343–44.

Even if the Court reaches balancing, transfer is unwarranted. The Sixth Circuit gives weight to a plaintiff's forum choice, particularly where the plaintiff sues at home, and § 1404(a) is not designed merely to shift inconvenience from one side to the other. *Reese v. CNH Am. LLC*, 574 F.3d 315, 320 (6th Cir. 2009); *Reed Elsevier, Inc. v. Innovator Corp.*, 105 F.Supp.2d 816, 818–22 (S.D. Ohio 2000). Arcadia concedes its relevant corporate conduct occurred in New Jersey, not California. Mot., ECF No. 7 at PageID 58–59. Its own position therefore establishes that California

is not the locus of operative facts. Meanwhile, *Pisula*'s purchase, reliance, use, presuit notice, claimed injury, and proposed class are all Ohio-centered. California offers no convenience advantage except the location of one of *Pisula*'s law firms—an irrelevant consideration that should not displace Pisula's home forum.

The Court should deny transfer and deny Arcadia's request for an open-ended stay "pending resolution" of *Hayde*. Mot. at PageID 59–60. If the Court concludes that limited coordination is appropriate, the less prejudicial alternative would be a narrowly bounded stay tied to a concrete event—such as a ruling on class certification in *Hayde*—rather than transfer or an indefinite stay through merits proceedings and possible appeals.

## II. FACTUAL BACKGROUND

Pisula is an Ohio citizen who purchased Arcadia's Fungi-Nail products under the false but reasonable belief that they would treat nail fungus, as Arcadia advertises. Compl., ECF No. 1 at PageID 3–4 ¶¶8–9. Pisula was misled by the products' "Fungi-Nail" name, along with the claims made on its front label stating that it "Kills Fungus" and is "Clinically Proven to Cure and Prevent Fungal Infections" placed directly next to pictures of a human toenail. *Id.*, at PageID 5–6 ¶¶14–16. In truth, Arcadia's Fungi-Nail products are not effective at treating nail fungus. *Id.*, at PageID 6 ¶¶17–18.

Arcadia is a Delaware corporation with its principal offices in Bridgewater, New Jersey. Compl., ECF No. 1 at PageID 4 ¶11. Arcadia markets and sells the Fungi-Nail products in liquid, spray and pen form nationwide, including throughout the State of Ohio. *Id.* Pisula purchased a bottle of Arcadia's Maximum Strength Fungi-Nail Anti-Fungal Liquid in Springboro, Ohio, which is within this District. *Id.*, at PageID 3–4 ¶8.

As a direct and proximate result of Arcadia's misleading advertising and product labeling, Pisula was injured. Pisula would not have purchased Arcadia's Fungi-Nail product had he known

the truth: that the products did not effectively kill nail fungus despite their misleading representations. Compl., ECF No. 1 at PageID 1 ¶2. Accordingly, Pisula brought this class action[1] against Arcadia in his home District, seeking to represent other similarly misled individuals throughout the State of Ohio. *Id.*, at PageID 6 ¶19.

*Hayde* was filed in the Central District of California on December 6, 2024. Its current Second Amended Complaint names two California plaintiffs and seeks a California class and a putative nationwide class. Ex. A, ECF No. 7-1 (*Hayde* Second Am. Compl.) at PageID 69–70 ¶20. But the nationwide causes of action are only intentional misrepresentation, negligent misrepresentation, and express warranty. *Id.* at PageID 72–77 & 80–81 ¶¶28–55, 73–77. California's False Advertising Law, Unfair Competition Law, and Consumer Legal Remedies Act counts are expressly limited to the California class. *Id.* at PageID 77–81 ¶¶56–72, 78–82. *Hayde* pleads no CSPA claim, no Ohio implied-warranty claim, and no fraudulent-concealment or unjust-enrichment claims.

Arcadia also relies on *White v. Arcadia Consumer Healthcare Inc.*, in which the Southern District of Florida entered a short order transferring a Florida action to California under Eleventh Circuit law and § 1404(a). Ex. B (*White* Order), ECF No. 7-2 at PageID 84–85. The *White* Order contains no independent factor-by-factor analysis; it grants transfer "for the reasons articulated in Defendant's Motion." *Id.* It is nonbinding and applies a different circuit's first-to-file doctrine. Arcadia further relies on a magistrate judge's July 15, 2026 recommendation in *Duffey v. Arcadia*

[1] Pisula alleges causes of action for violations of Ohio common law, including: (1) fraud; (2) fraudulent concealment and omission; (3) negligent misrepresentation (pled in alternative to fraud), and (4) unjust enrichment. Compl., ECF No. 1 at PageID 9–14, 22 ¶¶2–63 & 114–119. Pisula also alleges violations of Ohio statutes, including: (1) violations of the Ohio Consumer Sales Practices Act, Ohio Rev. Code §§ 1345.01, *et seq.* (CSPA); (2) breach of express warranty, Ohio Rev. Code § 1302.26 (UCC § 2-313); and (3) breach of the implied warranty of merchantability, Ohio Rev. Code § 1302.27 (UCC § 2-314). *Id.*, at PageID 14–22 ¶¶64–113.

*Consumer Healthcare Inc.* The *Duffey* recommendation applies Fourth Circuit authorities and recommends a stay—not transfer—pending *Hayde*. Ex. D, ECF No. 7-4 (*Duffey* Mem. and Recommendation) at PageID 134–39. Neither ruling determines the issues before this Court.

## III. LEGAL STANDARD

The Sixth Circuit has recognized that the first-to-file rule is discretionary and its application is not mandatory. *Baatz*, 814 F.3d at 793. The first-to-file rule provides that "when actions involving nearly identical parties and issues have been filed in two different district courts, the court in which the first suit was filed should *generally* proceed to judgment." *Certified Restoration Dry Cleaning Network, LLC v. Tenke Corp.,* 511 F.3d 535, 551 (6th Cir. 2007) (internal quotations marks omitted) (emphasis in original). Courts in the Sixth Circuit generally evaluate three factors when determining whether to apply the first-to-file rule: (1) the chronology of events, (2) the similarity of the parties involved, and (3) the similarity of the issues or claims at stake. *Baatz,* 814 F.3d at 793. Courts should also "evaluate whether there are any equitable concerns that weigh against applying it . . . [including] extraordinary circumstances, inequitable conduct, bad faith, or forum shopping." *Id.* at 792.

28 U.S.C. § 1404(a) allows a party to seek transfer of an action to another district court "[f]or the convenience of the parties and witnesses" or "in the interest of justice." In resolving motions to transfer under § 1404(a), courts consider both private interest and public interest concerns. The private interest concerns include: (1) the plaintiff's choice of forum; (2) where the parties reside; (3) the location of willing and unwilling witnesses, and (4) the location of evidence, and (5) the locus of events that gave rise to the dispute. *Olin-Marquez v. Arrow Senior Living Mgmt., LLC*, 586 F.Supp.3d 759, 776 (S.D. Ohio 2022). The public interest concerns include: (1) the court's interest in judicial economy, (2) docket congestion, (3) local interest in deciding the controversy, and (4) the interest of conducting trial in the forum of the governing law. *Id*. at 778.

## IV. ARGUMENT

### A. The First-to-File Rule Does Not Require Transfer

#### 1. The doctrine is prudential and turns on substantial, not superficial, identity

The Sixth Circuit treats first-to-file as a prudential doctrine for managing overlapping federal litigation. *Baatz*, 814 F.3d at 789. Courts examine chronology, similarity of parties, and similarity of issues or claims, and then consider equitable concerns. *Id.* at 789–93. The rule is not jurisdictional and does not mandate transfer whenever two complaints concern the same defendant and product. Its purpose is to prevent genuinely duplicative litigation, not to erase meaningful differences in claims, parties, governing law, and requested relief.

Pisula does not dispute chronology: *Hayde* was filed first. But chronology is only one factor. As to parties, *Baatz* recognizes that absent putative class members are not parties to an uncertified class action. *Id.* at 790–91 (citing *Smith v. Bayer Corp.*, 564 U.S. 299, 313 (2011)). *Baatz* nevertheless allows substantial putative-class overlap to count toward similarity for first-to-file purposes. *Id.* That factor therefore does not decide the Motion; the decisive question is whether the issues overlap to the degree Sixth Circuit law requires.

On issue similarity, *Baatz* adopted a demanding formulation: the issues need not be literally identical but must be "materially on all fours" and possess such an identity that a decision in one action leaves "little or nothing" to determine in the other. *Id.* at 791–92 (quoting *Smith*, 129 F.3d at 361). That language matters. A shared factual nucleus is not by itself enough if the first case will leave substantial legal claims and remedies unresolved—which would happen here as Pisula brings claims neither brought nor addressed in *Hayde*.

#### 2. *Hayde* cannot resolve Pisula's Ohio causes of action or remedies

Arcadia's Motion understates the differences by asserting that "the only difference" is California versus Ohio substantive law. Mot., ECF No. 7 at PageID 54. Its own comparison table

disproves that statement. The table acknowledges that *Hayde* contains no fraudulent concealment or omission claim while *Pisula* does; that *Hayde*'s consumer statutes are California statutes while *Pisula* pleads the Ohio CSPA; that *Pisula* pleads implied warranty while *Hayde* does not; and that *Pisula* pleads unjust enrichment while *Hayde* does not. *Id.* at PageID 50. Four of *Pisula*'s seven causes of action thus have no counterpart at all in *Hayde*.

The remaining claims are not interchangeable merely because they use labels such as "fraud," "negligent misrepresentation," or "express warranty." *Pisula*'s claims arise from an Ohio purchase by an Ohio consumer and invoke Ohio elements, defenses, presuit-notice rules, privity doctrines, limitations periods, and remedies. The CSPA claim, for example, seeks actual or statutory damages of $200, potential trebling under Ohio Rev. Code § 1345.09(B), rescission, injunctive relief, fees, and class treatment subject to Ohio's prior-notice requirements. Compl., ECF No. 1 at PageID 15–16 ¶¶72–79. *Hayde* places none of those Ohio statutory questions before the California court.

The warranty claims likewise require Ohio-specific adjudication. *Pisula* alleges presuit notice under Ohio Rev. Code § 1302.65(C), challenges disclaimers under § 1302.29, invokes Ohio UCC damages under §§ 1302.88–.89, and pleads privity, authorized-retailer, third-party-beneficiary, and direct-sale theories directed to Ohio law. Compl., ECF No. 1 at PageID 16–22 ¶¶80–113. *Hayde*'s generic nationwide express-warranty count does not adjudicate those Ohio issues, and it contains no implied-warranty count at all.

This case therefore differs materially from *Baatz*. There, both actions asserted the same trespass, unjust-enrichment, and Natural Gas Act theories arising from the same gas-storage conduct; the Sixth Circuit emphasized that the plaintiffs asserted "the same claims," under "the same laws," using "the same theory," and sought the same relief. 814 F.3d at 791–92. Here, the

actions share factual allegations concerning Fungi-Nail labeling, but they do not assert the same claims under the same laws or seek the same remedies. If *Hayde* were resolved tomorrow, this Court would still need to adjudicate the CSPA, fraudulent concealment, implied warranty, unjust enrichment, Ohio presuit notice and privity questions, and Ohio statutory remedies. That is not "little or nothing."

Further, *Heyman v. Lincoln National Life Insurance Co*., 781 F. App'x 463 (6th Cir. 2019), is also distinguishable. There, the later plaintiff was insured under the same type of disability policy, challenged the same offset practice, and fit directly within the earlier putative class pursuing the same underlying insurance-benefit dispute. *Id.* at 476–78. *Heyman* did not involve a later state-specific complaint containing multiple causes of action and remedies absent from the first case. And even there, the Sixth Circuit held dismissal was too severe and required the case to be held in abeyance rather than extinguished. *Id.* at 479–80.

Arcadia's reliance on *Aero Advanced Paint Technology, Inc. v. International Aero Products, LLC*, 351 F.Supp.3d 1067 (S.D. Ohio 2018), offers little support. *Aero* involved two sides of the same trademark ownership/infringement dispute, with overlapping federal trademark claims and additional claims derivative of the same alleged infringement. *Id.* at 1071–72. Here, the Ohio statutory and warranty causes of action create independent state-law elements and remedies that the *Hayde* court has not been asked to decide for Ohio consumers. *Aero* does not hold that any common factual nucleus makes distinct state consumer statutes immaterial.

### 3. Equitable considerations and convenience favor allowing Pisula to proceed in Ohio

Even when the three first-to-file factors point toward application, equitable considerations are to be evaluated. *Baatz*, 814 F.3d at 792–93. Arcadia attempts to invert that inquiry by accusing Pisula's counsel of forum shopping because counsel represents consumers in several state-specific

actions. Mot., ECF No. 7 at PageID 54–55. But Pisula did not select an opportunistic foreign forum. He sued where he lives, where he bought the product, where he read the label, where he used the product, and where he allegedly lost money. Compl., ECF No. 1 at PageID 3, 5–6 & 11 ¶¶8, 13–18, 41. Filing an Ohio-law case for Ohio consumers in Ohio is the opposite of forum manipulation.

The footnote in *In re American Medical Sys., Inc.*, 75 F.3d 1069, 1088 n.22 (6th Cir. 1996), does not establish bad faith here. That multidistrict products-liability decision expressed concern about counsel appearing in several class actions in a very different procedural setting. It does not create a presumption that separate state-law actions are improper whenever the same counsel is involved. The pertinent equitable facts are the client's residence, the forum's connection to the controversy, and whether the first case can actually adjudicate the later plaintiff's rights.

Nor does common counsel make California convenient to Pisula. Convenience under first-to-file and § 1404(a) concerns parties and witnesses—not the office location of one law firm. A client does not surrender the convenience of his home forum because one of his attorneys practices elsewhere, particularly where local Ohio counsel also appears in this action. The Complaint's signature block identifies Ohio-forum counsel and separate *pro hac vice* counsel. The convenience of Pisula's counsel need not be considered by the Court, and is of no concern to Arcadia.

#### 4. ***White* and *Duffey* are nonbinding and materially different**

Arcadia's principal theme is that other courts have already acted. But each court must apply its governing circuit law and the specific claims before it. *White*'s two-page order applies the Eleventh Circuit first-filed rule and § 1404(a), with no independent analysis beyond incorporating Arcadia's motion. *See generally* Ex. B, ECF No. 7-2. It does not address *Baatz*'s "materially on all fours" formulation, Ohio law, Ohio remedies, or the jurisdictional threshold discussed below. A summary, nonprecedential order from another circuit cannot substitute for the individualized

analysis required here. It is persuasive only to the extent its reasoning fits Sixth Circuit law—and it does not address the Ohio-specific distinctions that exist here.

*Duffey* likewise does not resolve this motion and is even less supportive of Arcadia's requested remedy. The Magistrate Judge applied Fourth Circuit authorities to a North Carolina pleading and recommended a stay. *See generally* Ex. D, ECF No. 7-4. The recommendation's choice of a stay rather than transfer underscores that the remedy is discretionary. Neither decision considered whether the Central District of California had personal jurisdiction and venue over Pisula's Ohio-only claims under *Hoffman*, *Daimler*, *Bristol-Myers*, § 1391(c)(2), and § 1391(d).

The Court should therefore decide the motion based on Sixth Circuit precedent, the Ohio Complaint actually filed, and Arcadia's failure to show that California is a proper and genuinely more convenient transferee forum.

### B. The § 1404(a) Factors Do Not Favor Transfer

Courts considering a transfer under § 1404(a) must determine whether: (1) the action might have been brought in the proposed transferee court; and (2) whether transfer is justified for the convenience of parties and witnesses in the interest of justice. *Kay v. Nat'l City Mortg. Co.,* 494 F.Supp.2d 845, 849–50 (S.D. Ohio 2007). "In requesting such a transfer, though, a defendant confronts an uphill climb" because "the onus of showing that a plaintiff's choice of forum is unnecessarily burdensome falls on the defendant." *Nat'l Republican Senatorial Comm. v. Fed. Election Comm'n*, 672 F.Supp.3d 538, 543 (S.D. Ohio 2023). "Unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Id.* Here, the factors do not "strongly favor" transfer.

#### 1. Arcadia has not established that this action could have been brought in the Central District of California

Section 1404(a) permits transfer only to a district where the action "might have been brought" or to a district to which all parties consent. Pisula does not consent. The Supreme Court

has held that the transferee forum must have been independently available to the plaintiff when suit was filed; a defendant's later consent or waiver cannot manufacture the statutory prerequisite. *Hoffman*, 363 U.S. at 343–44.

Arcadia's threshold showing is inadequate. It reasons that California is proper because Arcadia "does substantial business" there and is already defending *Hayde*. Mot., ECF No. 7 at PageID 55–56. But corporate venue under 28 U.S.C. § 1391 (c)(2) depends on personal jurisdiction "with respect to the civil action in question," and California is a multi-district State, making § 1391(d)'s district-specific contacts rule relevant as well. Arcadia is incorporated in Delaware and headquartered in New Jersey. Compl., ECF No. 1 at PageID 4 ¶11. Thus, it is not ordinarily "at home" in California for general jurisdiction. *Daimler*, 571 U.S. at 137–39.

Specific jurisdiction is equally problematic. Pisula is an Ohio resident; he bought the product in Ohio; relied on the challenged label in Ohio; used the product in Ohio; and alleges Ohio injury and Ohio-law claims. Compl., ECF No. 1 at PageID 3, 5–6, 11, 13–17 & 20 ¶¶8, 13–18, 41, 58, 69, 76, 84 & 102. Arcadia itself insists that the product-labeling and marketing decisions occurred at its New Jersey headquarters. Mot., ECF No. 7 at PageID 58–59. The Motion identifies no California conduct from which Pisula's Ohio claims arise or to which they relate. *See Bristol-Myers Squibb*, 582 U.S. at 264–65 (California sales and extensive forum activities did not establish specific jurisdiction over nonresidents' claims arising elsewhere); *Ford Motor Co. v. Montana Eighth Judicial District Court*, 592 U.S. 351, 359–65 (2021) (specific jurisdiction requires a meaningful affiliation between the forum, defendant's forum activities, and the claims).

Arcadia's appearance in *Hayde* changes nothing. Personal jurisdiction may be waived in a particular case, but *Hoffman* forbids using a defendant's consent to make a forum one where a different action "might have been brought" for § 1404(a) purposes. 363 U.S. at 343–44. And

§ 1404(a) permits transfer to a district "to which all parties have consented"; Pisula has not consented. Arcadia therefore has not met the threshold requirement for § 1404 transfer.

**2. The private interest factors weigh against transfer to California**

Even assuming the threshold is satisfied, Arcadia bears the burden of demonstrating that transfer is warranted. *Hanning v. New England Mutual Life Ins. Co*., 710 F.Supp. 213, 214–15 (S.D. Ohio 1989). Sixth Circuit courts consider party and witness convenience along with the interests of justice on an individualized record. *Moses v. Business Card Express, Inc*., 929 F.2d 1131, 1137 (6th Cir. 1991); *Tanyike v. United States*, 603 F.Supp.3d 572, 580 (S.D. Ohio 2022). The balance does not favor California.

The first factor, Pisula's choice of forum, weighs heavily against transfer. "Generally, when courts conduct § 1404(a) analyses, 'they must give foremost consideration to the plaintiff's choice of forum.'" *Olin-Marquez,* 586 F.Supp.3d at 776; *see also United States v. Cinemark USA, Inc.*, 66 F.Supp.2d 881, 888-89 (N.D. Ohio 1999) ("Plaintiff's choice of forum should be given 'great' or 'substantial' weight when considering to transfer a case under §1404(a)") (citing cases). This deference is heightened where, as here, Pisula brings suit in his home forum. *See Duha v. Agrium, Inc.,* 448 F.3d 867, 874 (6th Cir. 2006). Arcadia's three reasons why Pisula's choice to bring this action in his home forum should be afforded "little weight" fail. Mot., ECF No. 7 at 59.

*First*, Arcadia argues that Pisula's choice of forum should have reduced weight because he has brought a class action. Mot., ECF No. 7 at 59. But courts in this District still grant a plaintiff's choice of forum "some deference" even when they bring a class action. *Shapiro v. Merrill Lynch & Co.*, 634 F.Supp. 587, 589–91 (S.D. Ohio 1986) ("we are inclined to defer to plaintiff's choice of forum and to deny defendants' motion for transfer" of a class action); *see also Blake v. Fam. Dollar Stores, Inc.*, No. CIV.A. 2:07-CV-361, 2007 WL 1795936, at *2 (S.D. Ohio June 19, 2007)

("The Court must nevertheless give due-but not controlling-deference to plaintiff's choice of forum" even where the case has been brought as a class action).

*Second*, Arcadia notes that the operative facts of this action occurred in New Jersey, rather than Ohio or California. Mot., ECF No. 7 at 59. This does nothing to tip the balance in favor of transferring this action to the Central District of California and thus this cannot defeat Pisula's choice of forum. *Olin-Marquez,* 586 F.Supp.3d at 775 (plaintiff's choice of forum should not be disturbed "[u]nless the balance is strongly in favor of defendant").

*Third*, Arcadia accuses Pisula's counsel of forum shopping by filing similar actions in various district courts. Mot., ECF No. 7 at 59. That Pisula's counsel were retained by clients across the country to bring state-specific claims against Arcadia for its misleading product advertising is not evidence of forum shopping. *See Hamama v. Adducci*, No. 17-CV-11910, 2017 WL 2806144, at *3 (E.D. Mich. June 26, 2017) (filing of successive class action petitions was not, standing alone, evidence of forum shopping). And even if it were, that would still not defeat Pisula's choice of his home forum. "Unlike defendant forum shopping, plaintiff forum shopping 'is not an evil to be avoided, but rather is an inherent part of our federal court network. A plaintiff may have available numerous places of equal convenience to bring his or her suit, and has every right to file in the forum that is the most geographically convenient or that has the most favorable law." *United States v. Cinemark USA, Inc.*, 66 F.Supp.2d 881, 889 (N.D. Ohio 1999) (internal quotation marks omitted). Indeed, "[h]aving chosen a forum, a plaintiff would lose any advantage if the defendant were able—by scarcely overcoming the plaintiff's choice—to pull the well-placed procedural rug from under the plaintiff's feet." *Id*.

The second and third factors, where the parties reside and the location of willing and unwilling witnesses, weigh against transfer. Arcadia and its witnesses are located in New Jersey

and thus neither Ohio nor California is more or less convenient for it. *See* Mot., ECF No. 7 at PageID 57–58. On the other hand, Pisula is an Ohio resident who "only brings Ohio-based claims" and thus "[f]orcing Plaintiff to litigate those claims in [California], rather than here, would certainly be less 'convenient' for" him. *Olin-Marquez,* 586 F.Supp.3d at 777.

Arcadia is a national consumer-healthcare company; Pisula is an individual consumer. The record does not support Arcadia's suggestion that this disparity should receive "little or no weight" simply because the case is pleaded under Rule 23. Mot., ECF No. 7 at PageID 57–58. Arcadia's contrary premise is internally inconsistent. It argues that modern electronic practice and remote discovery make litigating in California minimally inconvenient to Pisula. Mot., ECF No. 7 at PageID 58. If distance is so unimportant, it cannot simultaneously establish that California is materially more convenient for Arcadia. Arcadia is a Delaware/New Jersey company. California is not its home. Transfer would simply move the burden from a national corporate defendant to an individual Ohio consumer. *Reed Elsevier*, 105 F.Supp.2d at 821–22 ("Section 1404(a) is not intended to shift the burden of litigating from one party to another."). *Tanyike* recognizes relative financial means as a relevant § 1404 factor. 603 F.Supp.3d at 580. At minimum, Arcadia has not shown that this factor favors California. "A transfer is not proper if that transfer would only shift the inconvenience from one party to another," as Arcadia's requested transfer would here. *Baglama v. MWV Consumer & Off. Prods.*, No. 3:13-CV-276, 2014 WL 3793294, at *3 (S.D. Ohio July 31, 2014); *see also Kuvedina, LLC v. Cognizant Tech. Sols.*, 946 F.Supp.2d 749, 761 (S.D. Ohio 2013) ("For a change of venue to be appropriate, the balance of convenience must weigh heavily in favor of the transfer; § 1404(a) is not intended to shift an action to a forum likely to prove equally convenient or inconvenient").

Arcadia identifies no material nonparty witness located in the Central District of California whose testimony would be unavailable in Ohio. Its Motion instead declares the witness factor neutral because most witnesses are controlled by one side or the other. Mot., ECF No. 7 at PageID 58. A neutral factor cannot satisfy Arcadia's burden. If Arcadia's corporate witnesses are in New Jersey, as its own locus argument implies, transfer to California moves them farther from headquarters rather than closer.

The fourth and fifth factors, the location of evidence and the locus of events giving rise to this dispute, do not support transfer as Arcadia concedes that California is not the locus of operative facts. As Arcadia notes, "the operative facts in this case occurred at Arcadia's New Jersey Headquarters," not in Ohio or California. Mot., ECF No. 7 at PageID 58. That concession defeats the proposition that California is a more appropriate factual forum. If the design, formulation, labeling, marketing, and corporate decision-making occurred in New Jersey, then neither Ohio nor California contains those headquarters-based events. California gains no comparative advantage. Ohio, however, contains case-specific operative facts California lacks. Pisula saw the product there, read the label there, purchased it there, used it there, allegedly failed to obtain the represented benefit there, and suffered the alleged economic loss there. Compl., ECF No. 1 at PageID 3–6, 12, ¶¶8, 14–18, 41. The Ohio warranty counts also arise from an Ohio retail transaction and Ohio-directed presuit notice. *Id*. at PageID 17–18, 20, ¶¶84–88, 102–05. Arcadia's statement that the place of purchase is merely "incidental" is difficult to reconcile with fraud, reliance, consumer-transaction, warranty, and damages claims that expressly depend on what Pisula saw, bought, paid, and received.

Likewise, the majority of the relevant evidence will also be located in New Jersey, and is essentially equally accessible in any forum by electronic means. *Olin-Marquez,* 586 F.Supp.3d at

778. *Reed Elsevier* similarly observed that document location will rarely favor transfer because records can readily be copied and transmitted. 105 F.Supp.2d at 822. Pisula's own purchase records, use, reliance, presuit notice, and local retail evidence are tied to Ohio. Because neither of these factors strongly favors transfer, they weigh against Arcadia's motion. Accordingly, neither the location-of-evidence factor nor the locus-of-events factor supports transfer, and Arcadia has not carried its burden. *See Nat'l Republican Senatorial Comm.*, 672 F.Supp.3d at 543.

*DeFrank v. Samsung Electronics America, Inc*., No. 1:18-cv-296, 2019 WL 6828357 (S.D. Ohio Dec. 13, 2019), does not compel transfer. *DeFrank* involved seven named plaintiffs from six states, a proposed nationwide class, and a proposed transfer to New Jersey—the defendant's principal place of business and the location of much of the challenged corporate conduct. Here there is one Ohio named plaintiff, an Ohio-only class, and Arcadia seeks transfer not to its New Jersey headquarters but to California, which Arcadia identifies as the location of no operative corporate decision.

### 3. The Public Interest Factors Weigh Against Transfer

The first factor, the court's interest in judicial economy, weighs only mildly in favor of transfer. While Arcadia points to the judicial efficiency of litigating this action along with the *Hayde* action and the Florida action in the Central District of California, this is not sufficient to defeat Pisula's choice of forum. This is particularly true because "the class in this case is 'explicitly cabined to Ohio [consumers]'" and given his "choice to file [his] case 'in the State where [he] lives" and "where [Arcadia] allegedly caused [him] injuries." *Hale v. Landmark Recovery of Ohio, LLC*, No. 3:22 CV 2011, 2023 WL 2923339, at * 1 (N.D. Ohio Apr. 6, 2023). Thus, "[t]hough judicial economy may slightly favor transfer," Arcadia's motion must still be denied because it "cannot demonstrate that the 28 U.S.C. §1404(a) factors weigh 'strongly in favor' of disregarding

Plaintiff's venue choice." *Id*. (denying motion to transfer action to district where two related cases were pending).

Arcadia places nearly all weight on judicial efficiency. However, § 1404(a) requires an individualized, case-specific balancing of the relevant private and public interests, including convenience, systemic integrity, and fairness. *Moses*, 929 F.2d at 1137 (citing *Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 29–30 (1988)). Although related litigation in another district is relevant, it does not compel transfer where the actions do not significantly overlap and the movant has not shown that the proposed forum is more convenient. *Reed Elsevier*, 105 F.Supp.2d at 820 n.7, 821–22.

The risk of duplication is also overstated. Discovery concerning Arcadia's formulation, labels, marketing, internal knowledge, sales, and regulatory materials can be coordinated or reused across cases through stipulations, cross-use protective-order provisions, deposition coordination, and production of previously produced documents. Duplication does not require relocating an Ohio plaintiff's state-law claims to a forum that has no underlying Ohio transaction and no identified Ohio-law advantage.

Nor does the possibility of inconsistent class-certification rulings justify transfer. Different state-specific claims and classes can properly produce different certification outcomes because governing law and proof differ. Uniformity for its own sake is not a reason to force distinct state-law causes of action into the first courthouse where a nationwide class was pleaded—particularly before any nationwide class has been certified.

The relative docket-congestion factor does not materially favor transfer. Although the Southern District of Ohio reports a larger pending caseload than the Central District of California, that raw comparison is heavily influenced by multidistrict litigation. As of June 30, 2026, the

Southern District of Ohio reported 27,890 overall pending matters. *See* Admin. Off. of the U.S. Cts., *U.S. District Court--Judicial Caseload Profile: Ohio Southern* (June 30, 2026). The same profile[2] reports 19,388 civil cases more than three years old, representing 72% of the District's pending civil cases. *Id.* But those generalized statistics do not establish how quickly this particular putative class action would proceed, and the extraordinary concentration of MDL actions in this District counsels against placing substantial weight on its raw pending caseload. Indeed, in considering the same proposed transfer from the Southern District of Ohio to the Central District of California, this Court found that differences in aggregate disposition statistics warranted little weight where the disparity substantially narrowed for cases requiring greater judicial involvement. *See MESA Indus., Inc. v. Charter Indus. Supply, Inc.*, No. 1:22-cv-160, 2022 WL 3082031, at *16 (S.D. Ohio Aug. 3, 2022) (concluding that docket congestion weighed "only slightly in favor of transfer, if at all"). Accordingly, the docket-congestion factor is, at most, neutral and should receive little weight in the individualized analysis required under § 1404(a).

Further, Ohio's local interest and familiarity with Ohio law favor retaining the action. Indeed, "Ohio has a strong interest in adjudicating a suit brought by an Ohio resident and in seeing

---

[2] But the Judicial Panel on Multidistrict Litigation reported the following day that 23,382 actions were pending in a single MDL in this District, *In re Davol, Inc./C.R. Bard, Inc., Polypropylene Hernia Mesh Products Liability Litigation*, MDL No. 2846, with another seven actions pending in a second Southern District of Ohio MDL. *See* U.S. Jud. Panel on Multidistrict Litig., *MDL Statistics Report--Distribution of Pending MDL Dockets by District* 3 (July 1, 2026) (reporting 23,382 actions pending in MDL No. 2846 and seven actions pending in MDL No. 3157 in the Southern District of Ohio). Thus, 23,389 actions were pending in active MDLs in this District, overwhelmingly in a single consolidated mass-tort proceeding. *See id.* Accordingly, the raw pending-caseload figure does not provide an apples-to-apples measure of the ordinary civil workload relevant to this action. The remaining congestion statistics are mixed. As of June 30, 2026, the Central District of California reported a median time from filing to disposition in civil cases of 3.8 months, compared with 13.3 months in the Southern District of Ohio. *See* Admin. Off. of the U.S. Cts., *U.S. District Court--Judicial Caseload Profile: California Central* (June 30, 2026); Admin. Off. of the U.S. Cts., *U.S. District Court--Judicial Caseload Profile: Ohio Southern* (June 30, 2026).

that its residents get the benefit of their bargains." *See, e.g., Mayfran Int'l, Inc. v. Eco-Modity, L.L.C.*, 2019-Ohio-4350, 135 N.E.3d 792, 802; *see also* Compl., PageID 3 ¶7 (alleging Plaintiff and the putative Ohio class "did not receive the benefit of their bargain because the Fungi-Nail products do not treat nail fungus."); *see also Lake v. Richardson-Merrell, Inc.*, 538 F.Supp. 262, 274 (N.D. Ohio 1982) ("Ohio has a substantial government interest" in litigation involving its torts and product liability law).

This Court will apply Ohio law to every cause of action pleaded. *Hayde*'s California statutory claims are limited to a California class, while Pisula invokes the CSPA and Ohio UCC provisions. Compl., ECF No. 1 at PageID 15–22 ¶¶72–113; Ex. A (*Hayde* Second Am. Compl.), ECF No. 7-1 at PageID 77–81 ¶¶56–82. Although federal judges routinely apply other States' law, familiarity remains a recognized factor. *Tanyike*, 603 F.Supp.3d at 580. An Ohio federal court has the greater institutional familiarity with Ohio's consumer statute, its class-treatment prerequisites, Ohio warranty law, and Ohio remedies.

Ohio also has a direct local interest in adjudicating an allegedly deceptive retail transaction involving an Ohio resident and a proposed class composed only of Ohio residents. California's legitimate interest in *Hayde*'s California plaintiffs does not create a superior interest in Pisula's Ohio statutory rights. The nationwide-labeling allegations may create common evidence, but they do not eliminate Ohio's interest in deciding how Ohio law governs Ohio transactions.

### C. Arcadia's Alternative Request for Stay Should be Denied

Arcadia alternatively asks to stay this action "pending resolution" of *Hayde*. Mot., ECF No. 7 at PageID 59–60. But Arcadia fails to provide a date certain and its request could encompass class certification, dispositive motions, trial, post-trial proceedings, and appeal. The Supreme Court cautions that only in rare circumstances should a litigant be compelled to stand aside while

another suit determines the rule of law affecting his rights. *Landis v. North American Co*., 299 U.S. 248, 255 (1936).

The Sixth Circuit requires a party seeking a stay to demonstrate a need for delay and to account for harm to the nonmoving party and the public. *Ohio Environmental Council v. U.S. District Ct.*, 565 F.2d 393, 396 (6th Cir. 1977). Arcadia's asserted hardship is the ordinary expense of defending litigation. That burden can be reduced through coordinated discovery without preventing an Ohio consumer from prosecuting Ohio causes of action that *Hayde* does not plead.

Arcadia's assertion that Pisula alleges no ongoing harm is also inaccurate. The Complaint alleges a continuing risk of future deception and seeks prospective injunctive relief. Compl., ECF No. 1 at PageID 4 & 23 ¶10 & Prayer ¶5. Most importantly, a final disposition in *Hayde* will not dispose of Pisula's CSPA, concealment, implied-warranty, unjust-enrichment, Ohio notice, and Ohio remedial issues. An indefinite stay risks years of delay only to return to this Court for claims *Hayde* never decided. If the Court concludes that some temporary coordination is warranted, Pisula respectfully requests a limited and reviewable stay tied to a specific event—such as the California court's ruling on *Hayde* class certification to preserve this Court's jurisdiction, protect the Ohio claims, and allow the Court to reassess what, if anything, *Hayde* actually resolves.

## V. CONCLUSION

For these reasons, Pisula respectfully requests that the Court deny Arcadia Consumer's request to transfer venue and deny its alternative request for an indefinite stay.

Dated: August 13, 2026

Respectfully submitted,

*/s/ Chumahan B. Bowen*

Chumahan B. Bowen (admitted *pro hac vice*)
**WILSHIRE LAW FIRM, PLC**
660 S. Figueroa Street, Sky Lobby
Los Angeles, California 90017

Telephone: (213) 381-9988
Facsimile: (213) 381-9989
*chumahan.bowen@wilshirelawfirm.com*

David C. Indiano
**INDIANO & WILLIAMS**
207 Del Parque St., 7th Floor
San Juan, Puerto Rico 00912
Telephone: (787) 641-4545
*david.indiano@indianowilliams.com*

*Attorneys for Plaintiff and the Proposed Class*